VAN AUKEN et al. v. MONASH–YOUNKER CO.

CONSOLIDATED ENGINEERING CO. et al. v. SAME.

(Circuit Court, N. D. Illinois, E. D. February 11, 1911.)

Nos. 29,249, 29,255.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DISCHARGE VALVE FOR STEAM RADIATORS.

The Van Auken patent, No. 828,153, for valve mechanism for discharging air and water of condensation from steam heating systems, was not anticipated, although the elements of the combination were all in the prior art in some form, and discloses invention; and, while not a pioneer in a broad way, the claims are entitled to a reasonably liberal construction. The first four claims, while broad in terms, must be limited by the specification and drawings to a structure in which the conduit between the radiator and the float chamber opens into the chamber above the line at which the water of condensation therein lifts the float.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

As so limited, the patent is not infringed by the device of the Boegen patent, No. 959,297.

2. PATENTS (§ 328*)—INFRINGEMENT—DISCHARGE VALVE FOR STEAM RADIATORS.

The Canfield and Van Auken patent, No. 890,555, for a discharge valve mechanism for steam radiators, is not infringed by the device of the Boegen patent, No. 959.297.

In Equity. Suit by Byron E. Van Auken and the Consolidated Engineering Company against the Monash-Younker Company and by the Consolidated Engineering Company, Arthur L. Canfield, and Byron E. Van Auken against the same. Decree for defendant in each case.

Bills for infringement of patent No. 828,153, applied for August 1, 1903, issued August 7, 1906, to Byron E. Van Auken, and No. 890,555, applied for March 22, 1902, issued June 9, 1908, to Canfield and Van Auken. The invention of Van Auken, embodied in both patents, was made in 1896, and a sketch made November 17, 1896, containing its broader features; and which were disclosed by Van Auken to Canfield July 15, 1901. Defendant's valve, alleged to infringe, is made under the Boegen patent, No. 959,297, issued May 24, 1910. Complainant's valves are called "Thermofiers," or "Belvac Thermofiers," and defendant's are known as "Radifiers." All are shown in the accompanying cuts.

In order to apprehend clearly the problem of relieving a steam radiator of condensation, the nature of steam must be understood. It is not a mixture of air and water, but of water and heat. Ice, water, and steam are the same

in chemical composition, known as $H_2O$, the difference between them being the quantity of latent heat. If to a pound of water at 32° F. heat is applied, it will take 180° more to bring it to the boiling point, or 212°. If more heat is applied, the water does not become any hotter, but changes gradually into steam; and, when 966 more heat units have been applied, the given quantity is all in the form of steam at the same temperature of 212°. The 966 degrees of heat are latent, and its presence cannot be detected by any thermometer, but the addition of more heat will raise the temperature of the steam. Steam may therefore be called a gas with 212 degrees of sensible or perceptible heat, and 966 degrees of imperceptible heat, but combining no air. When cooled in a radiator, or otherwise, the water and latent heat are gradually set free, and the 966 units become available for heating purposes. If condensed in an air-tight vessel, a vacuum results.

The steam occupies 1,700 times as much space as the water from which it is formed. If a radiator contains 1,700 cubic inches of space, and is full of steam, condensation will produce one cubic inch of water, and the rest of the space will be occupied by more steam from the boiler, or, if that be excluded, by air coming in from the outlet pipe or air valve. Some air will be found mixed with the steam, and this must be continuously removed, as well as the water of condensation.

One of the problems of steam heating has been the expulsion of air before steam is admitted, and next the taking care of the water of condensation, and of whatever small amount of air is mixed with the steam, during the period while the radiators are being supplied with steam, at the same time preventing the waste of steam by forcing or sucking it into the outlet pipes. The process is aided by putting these pipes in connection with a vacuum pump, and thus creating a lower pressure in the outlet than the steam pressure in the radiators and supply pipes. To maintain this differential pressure a seal or closure of some kind must be made, either in the outlet pipes or between them and the radiators, so that the steam will not pass out and be wasted. The valves involved in these suits are designed for this purpose, and may be called water float or water seal valves, represented by the Webster system; Webster being a licensee of Van Auken. Pressure valves and thermostatic valves are also used. Practical difficulty has been encountered in discovering a device which would take care of the water of condensation and the air carried along with the steam, prevent waste of steam, and at the same time be so small and inconspicuous as to occupy little floor space, and not present an objectionable appearance. Van Auken was the first to thoroughly solve this difficulty so far as water float valves are concerned. The present commercial form of the Paul valve is also said to be successful, combining the elements of water float and pressure, but the evidence does not disclose the form now in use. Defendant used the Boegen water float valve. If the Van Auken claims are construed broadly, infringement is shown, otherwise not.

Coming now to the particular description of the different valves, the first Van Auken claim, which contains substantially everything in the first four claims embraced in one of these causes, is as follows: "1. Valve mechanism for discharging air and water of condensation from steam heating systems by differential pressure comprising a float chamber, a liquid discharge passage communicating therewith, a float for governing said discharge passage, a conduit adapted to provide communication between a radiator and said float chamber, a liquid seal arranged to be sealed by the accumulation of water of condensation in said conduit, thereby increasing the differential pressure on the opposite sides of said liquid seal, whereby a portion of the accumulative water of condensation is forced into said float chamber, and an air discharge passage arranged to discharge the air after it has passed said liquid seal." The other five claims of the Van Auken patent, not here in suit, narrow the claim by providing that the conduit shall open or discharge into the float chamber above the line of flotation of the float, as shown in the accompanying cut.

One of the claims in suit of the Canfield and Van Auken patent reads thus: "3. Valve mechanism for discharging air and water of condensation from steam heating systems by differential pressure, comprising a float chamber,

a liquid discharge passage communicating therewith, a float for governing said discharge passage, a conduit adapted to provide communication between a radiator and said float chamber, a liquid seal arranged to be sealed by the accumulation of water of condensation in said conduit, thereby increasing the differential pressure on opposite sides of said liquid seal, whereby a portion of the accumulated water of condensation is forced into said float chamber, and an automatically controlled air discharge passage arranged to discharge the air after it has passed said liquid seal, said air discharge passage communicating with the liquid discharge passage beyond the float chamber."

A description of the operation of the valves will serve to show the principles of operation, and differences between them.

Important claims of the various parties are the differential pressure, the conduit, the water seal to prevent loss of steam without interfering with the ready escape of air through the seal, the place where the condensation water enters the float chamber, the air escape channel, the place where water and air are discharged into the outlet or return, and the carrying off of air and flotage. Let it be supposed that a steam heating system has been just installed, ready for the steam to be turned on. The radiators and valves are cold, and full of air, with some oil, flotage, and dirt in them. Suppose, also, that the outlet pipes are connected to a vacuum pump so as to create a pressure slightly less than that of the atmosphere, inside the heating system. When steam is turned on, the air in the radiators is forced out, passing through the air escape passages in the walls of the float chamber in complainants' valves, and through an air escape passage in the top of the float, in defendant's, and then down into the outlet. The steam also flows out of the radiators into the valves and through the air passages; but, as condensation collects in these small passages the escape of any great amount of steam is prevented, they becoming water sealed. As the steam condenses, it gives up its latent heat, and is converted back into water. A small amount of air must also be drawn off through the valves, as well as the small body of condensing water. In all the forms of valve it will be noticed by looking at the cuts that, as soon as enough water has collected in the trap to cover the bottom of the weir, a liquid seal is formed, tending to prevent the further escape of steam, and to create a greater pressure on the inlet or radiator side than on the other; and, as the water is forced higher, the seal is made more stable, tending more and more to retard the escape of steam through the water into the valves and thence to the outlet. The condensed water is hot, slightly below the boiling point. The steam in the radiator will not pass the seal to any great extent, but the small amount of air coming in with the steam will do so by bubbling through the water.

How the water of condensation is gotten rid of remains to be explained, and in this lies one difference between the thermofier of complainants and the radifier of defendants. The thermofiers have a hole in the bottom of the float chamber controlled by the up and down movement of the float. Wh(e)n the water rises by the differential pressure to about the middle of the float, the latter will be raised and buoyed up, some of the water will run out, the float will settle down and close the outlet, the water will again rise until the outlet again opens, and so on intermittently while steam is being constantly admitted to the radiators. Meanwhile the small proportion of air is passing out through the wall of the float chamber, down through an additional side passage or pipe opening into the outlet just below the water discharge. In the radifier or defendant's valve the operation is somewhat different. Here the float chamber is made tight, without any direct outlet. When the condensation water is forced by the differential pressure up to nearly the middle of the float, the water will pour over the dam made by cutting through a small portion of the chamber wall, and drop to the bottom of the side outlet, being at first prevented from escaping by the bottom stem of the float. While the water is flowing over the dam, flotage and oil will go over with it. When the side outlet is full of water, and is brought up to the level of the water in the chamber itself, further condensation will raise the whole body of water higher, and probably also tend to carry the flotage back from the dam or mouth of the side outlet into the chamber. When the water level rises slightly above the dam, reaching about the middle of the float, the lat-

ter will rise, pulling its lower guide stem up, opening the bottom of the side outlet, and allowing water and air to escape, and some of the flotage, until the float sinks back to its original position and closes again the bottom of the side outlet. It will be seen that the lower half of the float chamber is thus kept full of water, and a permanent water seal established. Further, it will be noticed that the margin between floating and not floating is very narrow. After the side outlet is filled, a slight rise in the float chamber will buoy up the float and discharge the water in the side outlet. As the float rises, the water around it sinks correspondingly in the chamber, but is still maintained as high as the top of the side outlet, tending to keep the float in its raised position for some time, and permit the ready escape of air, and the rising water of condensation trickling over the dam, until the float gradually sinks to its lowest point, when the operation is repeated. Necessarily the rising and falling of the float is noiseless, and this is also true of complainants' valves.

Poole & Brown, for complainants.
Banning & Banning, for defendant.

SANBORN, District Judge (after stating the facts as above). Four questions are raised: Anticipation, construction, infringement, and the character of the Canfield and Van Auken patent, and whether infringed. The difficulties have been much relieved by the great variety of clear cuts, diagrams, illustrations, and the various models. The points will be considered in this order.

1. Anticipation of the Van Auken valve. There are many patents in the prior art which show one or more of the elements of the Van Auken device. Those elements are a float chamber, a float, a liquid discharge outlet opened and closed by the movement of the float, a conduit from the radiator to the float chamber, a liquid seal in the conduit, and an air discharge passage from the float chamber connecting with the main outlet pipe from the valves. All of these elements are found in the prior art, and the following are the forms most relied on to show anticipation:

The English patent to Vickerman, No. 941, of 1860, contains all the above elements, operating in a different way. There is a float, a float chamber, a liquid discharge governed by the float, a conduit from radiator to float chamber, a liquid seal, and an air discharge passage. But the seal is not in the conduit, not forming until the water in the float chamber rises nearly to the flotation line; nor does the air discharge open or lead into the return, but into the open air. Both steam and air set free by condensation may pass into the float chamber until the seal is formed, and again as soon as it is broken, thus destroying differential pressure. A like result follows from the operation of the air escape valve, which closes as soon as the steam pressure in the float chamber exceeds the pressure of the atmosphere. Whatever effect this device may have in limiting the Van Auken device, it is clearly no anticipation, designed to work on a different principle.

The Wade patent of 1900, No. 659,776, application made October 16, 1899, not being pleaded as an anticipation, is subsequent to the Van Auken patent because his invention dates from November 17, 1896. The two-year period referred to in the statute of March 3, 1897, prior to the application filed, does not therefore apply. Barnes

Automatic Sprinkler Co. v. Walworth Mfg. Co., 60 Fed. 605, 9 C. C. A. 154, 18 U. S. App. 538, Woods, C. J.

[1] The Donnelly British patent of 1900, No. 11,741, although applied for June 28, 1900, several years after Van Auken's invention, might be an anticipation, because properly pleaded in the answer. This patent, however, is for a pressure motor valve, the water discharge being controlled by a diaphragm acting as a pressure motor, and not by the float. The principle of operation is different.

The British patent of Russel, of 1900, No. 12,605, is also part of the prior art for the same reason applying to the Donnelly device. Every element of the Van Auken invention except one is found in Russel; that exception being the liquid seal. The conduit is also quite different. The air of condensation is not forced through the water, nor is there a differential pressure between radiator and valve, since steam is freely admitted to the float chamber, and is only prevented from escaping through the air outlet by the small size of the latter.

Another alleged anticipation is the United States patent to Paul, applied for April 16, 1901, issued June 12, 1906, numbered 823,074. This device operates in much the same manner as the Donnelly pressure motor valve, but, not being pleaded in the answer, and being actually later than Van Auken, could not be an anticipation.

Ford's invention, No. 673,250, of 1901, is not explained by defendant's expert witness. It provides ample means for discharging the water of condensation, but none for the air. Although it has a conduit much like Van Auken, it is difficult to see how it could be operative without any air discharge.

The Ryan patent of 1876, United States, No. 172,586, is not set up in the answer, but is part of the prior art, though not explained by defendant's expert. It is principally designed as a steam engine trap, but was also adapted for use in heating dwellings. The claims are greatly specialized. No air passage is specified, shown or claimed, though it is possible there was one. No use of the device is shown by the evidence.

Royle's British patent of 1890, No. 17,841, is pleaded, and contains the elements of the Van Auken device in much the same manner as Vickerman. It also operates in a somewhat different way from Van Auken.

The Connor patent of 1877, No. 195,984, has a float, but no liquid seal. The device operates in an entirely different way from Van Auken.

Coffee's invention, No. 302,622, of 1884, is not pleaded. It apparently has in some form all the elements of Van Auken, but the drawings are inconsistent with the description and claims, and it is impossible to tell whether there is any air outlet connecting with the return pipe, or whether steam can enter the float.

Canfield and Van Auken's patent is not an anticipation of Van Auken, not being pleaded as such, nor properly so pleadable.

Other patents of the prior art appear in evidence, but those referred to come the nearest to being anticipations. It is apparent that none

of them, whether pleaded or not, is such an anticipation as to avoid the Van Auken patent. They do, however, narrow it, and take away much from the broad character of its claims. There is another reason why it is undoubtedly valid, disclosed by claim 5, and by all the claims except the first four. In these the conduit is described as opening into the float chamber above the flotation line. This feature in connection with the formation of a water seal in the pocket under the weir, although found in the Ford patent, makes the Van Auken invention new as a combination. Defendant does not, in its device, make use of this feature, which is found in Van Auken's present commercial form, and is claimed by defendant to be a necessary part of the Van Auken combination. I think the Van Auken patent is valid in all its claims, but that the broad claims in suit are much narrowed by the prior art.

2. Construction of the Van Auken patent. The question of infringement largely depends upon what construction is to be given to the Van Auken claims, upon how broadly or how narrowly they ought to be interpreted, in view not only of the prior art, but the description and drawings. If construed anywhere near as liberally as the claims in suit on their face require, infringement is clear; if narrowly, it is avoided. It is quite apparent that Van Auken was not a mere improver, like one who finds an operative and successful combination device in every day use, and who, by adding a new element, or dispensing with an old one, invents a new and patentable combination, and improves upon the earlier form, for no fully successful device preceded him. None of the prior art structures was in general or even very successful use. Many of them were too large for offices or dwellings. Some, like Wade and Russel, were of proper size, but not on the market, though one or two had been fairly successful. There was no valve being sold which would separate the air and water of condensation from the steam. Van Auken was more efficient than any earlier one. In a form different from the four claims in suit, and from all the claims in both of complainants' patents, it has been very successful; and in the hands of licensees it has been quite successful in forms substantially agreeing with the first four Van Auken claims, without the overflow conduit feature of the fifth claim. It is also established by the evidence that Van Auken was the first to clearly understand that the small amount of mixed air will pass through a water seal, while steam will not. Van Auken was thus much more than an improver in a field already developed. The art had not yet reached a fully successful stage. He brought it to its full development by taking the last step. Boegen, who patented defendant's valve, was an improver in a fully developed field, and his claims are simply highly specialized descriptions of his device. The elements of the Van Auken invention are all in the prior art, in some form, but it required a considerable degree of invention to bring them out of a state of uselessness by the first clear apprehension of the problem, and finding a successful solution. While not a pioneer in any broad way, Van Auken is entitled to the credit of making a considerable advance, and his invention should have a reasonably liberal construction.

To what extent the four claims in the first suit should be further narrowed by the specification and drawings presents a second question of construction. Each of the four claims prescribes "a conduit adapted to provide communication between a radiator and said float chamber," while the others, not in suit, limit the scope of the broader claims by providing that the conduit shall open or discharge above the flotation line. The specifications and drawings, however, describe only the last form, a conduit opening above flotation. Must the broad claims, therefore, be limited by the description and drawings, substantially as limited by the nonlitigated claims? Complainants' expert testifies, answering a question as to how broad a field was intended to be covered by the word conduit, that it must be the peculiarly shaped conduit shown in the specifications and drawings; that is, a conduit opening into the float chamber above the flotation line. Under the rule of Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235, and decisions following that case, it is clear that this limited construction must be applied to the four broad claims. The inventor carefully describes this peculiar conduit, and fully shows its advantages, without mentioning any other, except by inference in employing different claims. In the Canfield and Van Auken patent a simpler form of conduit is claimed, so it is plain that the precise description of the Van Auken specification was intentional; Canfield and Van Auken having first applied for their patent. The four claims in suit are thus amended by the description and drawings so as to include only a conduit discharging above the flotation line.

3. Infringement. With the conduit limited as suggested, it seems clear that defendant does not infringe, since its conduit discharges directly into the float chamber at the bottom, far below the line of flotation, and on a somewhat different principle. While the liquid seal in both devices is formed in the inlet as soon as the condensed water reaches the bottom of the depending weir, yet the more permanent seal of Van Auken is maintained in the conduit from the inlet pipe to the top of the conduit, and that of the defendant is maintained in the float chamber itself. This difference accounts for suit being brought only on the four claims, and not on those covering the element of higher outlet. Reading this element into the broad claims, as it seems necessary to do, infringement is avoided.

A like result follows in respect to the water discharge. Van Auken empties the float chamber as soon as the water gets high enough to buoy up the float, while defendant keeps the water constantly at a point just below the flotation line. Van Auken discharges only the water of condensation by the rising of the float, while defendant discharges water, flotage, and air by a like operation. The working of the device is in this respect sufficiently different from Van Auken's, and on a sufficiently different principle, to avoid infringement, even if the claims as to the conduit are to be given a broad construction, instead of the narrowed one here adopted. Defendant's water outlet is entirely new, and accomplishes a somewhat improved result. On both grounds, and without considering the air discharge so far as air escapes through the float, infringement is not shown.

[2] 4. The Canfield and Van Auken patent. I think it is clear from the proofs that there was no joint invention of the broader elements of this patent, for the same reason that they were all disclosed by Van Auken to Canfield prior to the joint application. This patent may be sustained as a specific improvement of the earlier invention, but as such is not infringed. Even if valid as to the broad claim of a water discharge governed by the float, infringement would be avoided by the different operation of defendant's liquid discharge, as already explained.

There should be a decree in each case dismissing the bill, with costs.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes