MONASH-YOUNKER CO. v. VAN AUKEN et al.

VAN AUKEN et al. v. MONASH-YOUNKER CO.

(Circuit Court of Appeals, Seventh Circuit. February 20, 1912.
Rehearing Denied May 7, 1912.)

Nos. 1,810, 1,818.

PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — DISCHARGE VALVE FOR STEAM RADIATOR.

The Van Auken patent, No. 828,153, for improvements in valves for radiators for discharging air and water of condensation from steam-heating systems was not anticipated and discloses invention, but the scope of the invention is limited by the prior art to the particular means in combination described and shown; as so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Two suits in equity by Byron E. Van Auken and by the Consolidated Engineering Company against the Monash-Younker Company. Decree for complainants in one suit, and defendant appeals. Reversed. Decree for defendant in the other, and complainants appeal. Affirmed.

For opinion below, see 187 Fed. 141.

The appellants Van Auken and Consolidated Engineering Company (in No. 1,818) are the complainants in two successive bills filed against the Monash-Younker Company, as defendant, charging two several infringements of letters patent No. 828,153, issued to Van Auken August 7, 1906, for "improvements in valves for radiators," on application filed August 1, 1903.

The earlier bill involved an alleged infringement in the manufacture and use of a valve mentioned in the testimony as the "Boegen valve," purporting to be made under subsequent letters patent No. 959,297, issued to J. E. Boegen. It appears to have been heard together with another bill filed by the complainants, joined with one Canfield, against the same defendant, charging like infringement of letters patent No. 890,555, issued to Canfield and Van Auken June 9, 1908, on their application filed March 22, 1902. Both bills were dismissed, on final hearing of the issues, upon the ground of noninfringement, as stated in the opinion of the trial court, reported 187 Fed. 141. The appeal No. 1,818 is from the decree dismissing the first-mentioned bill, founded on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Van Auken's sole patent (No. 828,153), brought by the complainants therein, and does not involve the bill wherein Canfield was joined as complainant.

Pending the final decree above mentioned, the complainants therein filed their second bill against the same defendant, which involves an alleged infringement of Van Auken's patent (No. 828,153) in the manufacture and use of a valve referred to as the "Leuthesser valve," purporting to be made under subsequent letters patent No. 946,970, issued to F. W. Leuthesser. The complainants made application thereunder for an injunction (pendente lite) restraining such alleged infringement, and upon hearing thereof an injunctional order was granted—no opinion thereupon appearing of record—and the defendant prosecutes therefrom the above-entitled appeal, No. 1,810.

The testimony under both of these bills filed by the present complainants is contained in a single record (1,810) and the appeals were heard together. Both are considered, accordingly, in one opinion.

The specifications of Van Auken's patent in suit (No. 828,153) thus describes the objects of the invention: "This invention relates to valves designed to be placed upon the discharge ends of radiators of steam-heating systems for the purpose of discharging the air and water of condensation from the radiators; and the object of the invention is to provide means whereby when the air contained in the radiator to which the device is attached has been forced from the radiator through this device by the pressure in such radiator being greater than the pressure on the discharge end of this apparatus no considerable quantity of steam will be discharged from the radiator, while water of condensation forced into or deposited in the device will be automatically discharged therefrom when more than a given quantity of such water of condensation is contained in the float-chamber thereof. A further object of the invention is to obtain a device of the kind named and for the purpose set forth which will produce a minimum of noise in the operation thereof, particularly when applied to a vaccum steam-heating system."

The drawings are:

The general description, for reference to the drawings, appears as follows: "In the drawings referred to, Figure 1 is a side elevation of a radiator with a device embodying this invention attached thereto, such figure showing also the attachment of the steam-supply pipe to the radiator and the attachment of a pipe to the discharge end of this apparatus, such pipe being adapted to constitute the vacuum-pipe of a vacuum steam-heating system. Fig. 2 is a vertical sectional view, on an enlarged scale, of the device embodying this invention; and Fig. 3 is a view showing in detail a leakage-groove in the valve attached to the float of the apparatus.

"A reference letter applied to designate a given part is used to indicate such part throughout the several figures of the drawings wherever the same appears.

"In Fig. 1, A is a radiator in a steam-heating system, B is a steam-supply pipe to radiator A, and C is a valve which when closed prevents admission of steam to radiator A and which must be open in order to permit steam to flow from steam supply pipe B into radiator A. D is a side elevation of a device embodying this invention attached to the discharge end of the radiator A, and E is a pipe attached to the discharge end of this apparatus.

"For the construction of the device embodying this invention particular reference is made in the description to Fig. 2 of the drawings, wherein d is the outer shell or casing of the device. F is the stem of the device, by means of which the device is attached to the radiator, preferably by a union G, consisting of the parts g g'. H is a well in the shell d, adjacent to the stem F. J is the float-chamber of the device. K is a float in float-chamber J. Radiator A and float-chamber J are connected by a conduit comprising a passageway through stem F to well H and a passageway I from well H to such float-chamber. Passage I discharges into float-chamber J above the level of the water therein required to lift the float K, as at i. h is a continuation of the side wall of the casing to below the top of the passage in stem F, forming a weir. Float K is provided at the lower end thereof with valve k, seating on seat l, to close outlet L when the float is in its lowest position, and at its upper end with guide-stem k', moving loosely in the recess d', provided therefor in shell d. k² is a groove in valve k, forming a leakage therethrough when the valve is seated. k³ is a stem to valve k, extending below the valve-seat l into the outlet L, such stem tending to keep the valve-seat clean in the operation of the apparatus. Valve-seat l is preferably raised slightly above the bottom of float-chamber J for the same reason—that is, to tend to keep the valve-seat clean. M is a vertically extending passageway communicating at its upper end, as by means of the restricted passageway N, with the float-chamber J, and at its lower end with the outlet L below the seat l of valve k. The restricted passageway N is of such diameter that when steam passes therethrough some of such steam is converted into water of condensation. O is a cap provided to close the opening in the wall of shell d, through which the elbow n (provided with the restricted passageway N therethrough) is inserted in its place in passageway M and screwed into position substantially as illustrated in Fig. 2 of the drawings. O' is a cap closing the upper end of passageway M. O² is a cap closing the upper end of the float-chamber J."

The claims whereof infringement is alleged in No. 1,818 are:

"1. Valve mechanism for discharging air and water of condensation from steam-heating systems by differential pressure, comprising a float-chamber, a liquid-discharge passage communicating therewith, a float for governing said discharge-passage, a conduit adapted to provide communication between a radiator and said float-chamber, a liquid seal arranged to be sealed by the accumulation of water of condensation in said conduit, thereby increasing the differential pressure on opposite sides of said liquid seal, whereby a portion of the accumulated water of condensation is forced into said float-chamber, and an air-discharge passage arranged to discharge the air after it has passed said liquid seal.

"2. Valve mechanism for discharging air and water of condensation from steam-heating systems by differential pressure, comprising a float-chamber, a liquid-discharge passage communicating therewith, a float and a valve attached thereto for governing said discharge-passage, a conduit adapted to provide communication between a radiator and said float-chamber, a liquid seal arranged to be sealed by the accumulation of water of condensation in said conduit, thereby increasing the differential pressure on opposite sides of said liquid seal whereby a portion of the accumulated water of condensation is forced into said float-chamber, and an air-discharge passage arranged to discharge the air after it has passed said liquid seal.

"3. Valve mechanism for discharging air and water of condensation from steam-heating systems by differential pressure, comprising a float-chamber, a liquid-discharge passage communicating therewith, a float and a valve attached to the under side thereof for governing said discharge-passage, a conduit adapted to provide communication between a radiator and said float-

chamber, a liquid seal arranged to be sealed by the accumulation of water of condensation in said conduit, thereby increasing the differential pressure on opposite sides of said liquid seal, whereby a portion of the accumulated water of condensation is forced into said float-chamber, and an air-discharge passage arranged to discharge the air after it has passed said liquid seal.

"4. Valve mechanism for discharging air and water of condensation from steam-heating systems by differential pressure, comprising a float-chamber, a liquid-discharge passage communicating therewith, a float and a valve rigidly attached to and extending below the under side thereof and moving therewith to open and close said discharge-passage, a conduit adapted to provide communication between a radiator and said float-chamber, a liquid seal arranged to be sealed by the accumulation of water of condensation in said conduit, thereby increasing the differential pressure on opposite sides of said liquid seal, whereby a portion of the accumulated water of condensation is forced into said float-chamber, and an air-discharge passage arranged to discharge the air after it has passed said liquid seal."

The complainants contend that the remaining claims—5 to 9 inclusive—are involved with the foregoing in the second suit (No. 1,810), but claim 5 is sufficient for all purposes of the opinion, namely:

"5. Valve mechanism for discharging air and water of condensation from steam-heating systems by differential pressure, comprising a float-chamber, a liquid-discharge passage communicating therewith, a float for governing said discharge-passage, a conduit adapted to provide communication between a radiator and said float-chamber, and opening into said float-chamber above the line of flotation of said float, a liquid seal arranged to be sealed by the accumulation of water of condensation in said conduit, thereby increasing the differential pressure on opposite sides of said liquid seal, whereby a portion of the accumulated water of condensation is forced into said float-chamber, and an air discharge passage arranged to discharge the air after it has passed said liquid seal.

The "Boegen valve," charged to be an infringement in No. 1,818, appears in the drawings of the Boegen patent as follows:

The "Leuthesser valve," enjoined in No. 1,810 as an infringement, is thus shown in the drawings of Leuthesser's patent.

Other facts involved under the issues are stated in the opinion.

Thomas A. Banning, of Chicago, Ill., for Monash-Younker Co.

Taylor E. Brown, of Chicago, Ill., for Byron E. Van Auken, and another.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). These appeals are several, brought from a final decree in one suit and an injunctional order in another suit, successively instituted by the complainants, Van Auken and Consolidated Engineering Company, against the defendant, the Monash-Younker Company, for alleged several infringements of a single patent, No. 828,153, issued to Van Auken August 7, 1906. The bill first filed, involving an alleged infringement by the defendant's so-called "Boegen valve," was dismissed on final hearing of the issues, and the complainants' appeal from such decree is designated as No. 1,818. Therein the opinion of the trial court —reported 187 Fed. 141, conjointly with another bill for infringement not involved in the appeal—overrules the defense interposed of anticipation by prior patents, but sustains the defenses of limitation of the scope of the claims and of noninfringement thereunder. In the subsequent suit, however, the alleged infringement was another device adopted by the defendant, called the "Leuthesser valve," and upon hearing of a motion to enjoin the use thereof, pendente lite,

an injunctional order was granted—no opinion being filed—and the defendant appeals therefrom in No. 1,810.

For convenience both appeals were submitted and heard together —with the testimony in both suits embraced in one record (No. 1,810), but stipulated as applicable to either—and they are so treated in this opinion. Thus the defenses set up and urged under the primal bill (in appeal No. 1,818), both (1) of anticipation by prior patents and publications and (2) of limitation of the scope of invention and claims by the prior art, are made applicable to the second bill and order appealed from (in No. 1,810), so that these issues are involved alike in both appeals, leaving only the issue of infringement under each bill to be considered separately.

The Van Auken patent in suit (No. 828,153) was granted under an application filed August 1, 1903, for "improvements in valves for radiators," and both usefulness and popularity of the device and substantial improvement therein over the pre-existing valves or traps for analogous purpose are established facts under the evidence. It discloses a compact device of the well-known float-valve type, adapted for use in a vacuum system of steam-heating. As aptly stated in the brief for complainants, it is provided with means, when attached to the radiator, to "continuously and automatically carry away the air" and "automatically and intermittently carry away the water of condensation, while at the same time forming such a barrier between the outlet pipe and the radiator" that "waste of steam" is prevented. "Placed on the discharge of the radiator" and connected "with the return line in the vacuum system," it "automatically separates the air and the water of condensation from the steam and discharges the former while retaining the latter."

Invalidity of the patent is asserted upon two grounds—(a) for "complete anticipation" by prior patents and (b) for want of "proper mechanical combinations"—but we believe these contentions of the defendant are without merit and that neither requires discussion, aside from this remark: That the prior patents relied upon (British and American) are specifically mentioned in the opinion of the trial court, above referred to, and that we concur in the ruling thereof in so far as it upholds the validity of Van Auken's patent.

The issue of infringement presented under each appeal hinges upon interpretation of the patent claims in suit, respectively, with the scope of invention therein, under limitations imposed by the prior art, as the controlling inquiry. In support of each charge of infringement, it is contended on behalf of the complainants that Van Auken discovered and disclosed in the patent "a new principle for discharging air and water of condensation" from such heating systems, "striking out in an entirely new direction" from the old devices and "by the use of his new principle of operation" he disclosed "certain fundamental ideas in valve construction," and is well entitled to claim pioneer invention in that art. This contention, if tenable in the light of the prior art, would leave no escape from infringement by both of the devices adopted by the defendant. It is predicated, however, on the provision in the patent of a so-called "liquid seal" in the con-

duit from the radiator "to increase differential pressure and force the water up into the float-chamber" of the valve, and likewise discharge the expelled air "through the seal," alleged to be a departure from the entire prior art and contrary to "all its teachings"; in other words, that it was the patentee's discovery, "that air could be made to pass through a liquid seal by a differential pressure." So, if like use and function of this means is plainly disclosed in one or more prior valve devices, the patent claims must be limited accordingly, and the broad interpretation sought on the part of the complainants, through its alleged discovery by the patentee, is unauthorized. With the inquiry thus narrowed, we believe the evidence to be sufficient for its solution, without entering upon the other questions discussed in the briefs, whether disclosures of the prior art, in steam traps and plumbing devices, would not bar such broad definition of the invention.

Various prior patents, British and American, are in evidence and exhaustively discussed in the expert testimony and in the arguments of counsel, directed primarily to the issue of anticipation, but offered and discussed as well for proof of the prior art involved in the present inquiry. Four of these prior art references are deemed sufficient for mention in our opinion, namely: British patents, (a) No. 941, issued to Vickerman in 1860, and (b) No. 11,741, issued to Donnelly in 1900; United States patents, (c) No. 302,622, issued to Coffee in 1884, and (d) No. 673,250, issued to Ford, April 30, 1901. For interpretation of each of these patents, their disclosures of various means and functions are in dispute between the parties, and the evidence in respect of the devices of Vickerman, Coffee, and Ford is not satisfactory for complete understanding of all their co-operating means; but we are satisfied that the means and function of a liquid seal are disclosed therein, for passing at the inlet (automatically) both water and air, through differential pressure. The Donnelly patent, however, discloses completely, as we believe, both means and function of the liquid seal of the Van Auken patent, in so far as concerns the present inquiry, and if Donnelly's disclosure anticipates therein the Van Auken invention, in the sense of the patent law, it becomes immaterial whether the other references are anticipations in any measure.

Donnelly's British patent (No. 11,741) was granted in 1900, so that it was "more than two years prior to" Van Auken's application for his patent, August 1, 1903. It is contended on the part of the complainants that the actual date of Van Auken's invention is established by his undisputed testimony as November 16, 1896, and that he is thus entitled to priority over subsequent patents and publications. This view of the date of invention appears to be adopted in the opinion below, which states that "the invention of Van Auken, embodied in both patents, was made in 1896," and "disclosed by Van Auken to Canfield, July 15, 1901"—the other patent referred to being No. 890,-555, issued to Canfield & Van Auken, on their application of March 22, 1902, for another form of radiator-valve containing the so-called "liquid seal." Also, under interference proceedings in the Patent Office Van Auken was awarded priority over rival applicants for

analogous devices, but the issues there presented are plainly distinguishable from the present inquiry. The only invention here involved is that of the patent combination in suit, so that the question of priority hinges on the date of such invention; and neither fact nor date of the alleged Van Auken concept of the liquid seal, as a means to discharge both air and water from the radiator, can serve to broaden the scope of invention in this patent, unless it originated therein as part of the invention. In view, therefore, of its earlier embodiment in the Canfield & Van Auken application, we are not satisfied that the testimony carries back the invention of Van Auken's patent in suit to 1896, or any specific date prior to his application for a patent. Whatever may be its actual date, however, we are of opinion that the statutory amendment of 1897 (Act March 3, 1897, 29 Stat. c. 391, p. 692; sections 4886 and 4920, 3 U. S. Comp. Stat. 1901, pp. 3382, 3394) is applicable thereto, and that the invention cannot be carried back "more than two years prior to his application." Thus the Donnelly patent (pleaded in the answer as an anticipation) is prior in legal effect and pertinent as a disclosure of the prior art.

The Donnelly device exhibits a valve for attachment to the discharge end of the radiator, "adapted to automatically control the discharge of air and water of condensation from the" radiator, illustrated in Fig. 7 of the drawings as follows:

It describes and shows means for a water seal in the conduit from the radiator, substantially like that of Van Auken, whereby the air and water discharged from the radiator "pass through the seal by differential pressure," the water entering a float-chamber and operating the float, as in Van Auken's valve, except that the water enters below the float, instead of "above the line of flotation of said float" as specified in Van Auken's patent. They are not alike in means and arrangement for expelling water and air from the valve, and the Donnelly device differs substantially in its additional motor provision of a flexible diaphragm, with which the float co-operates to close the vent and the resulting suction "allows all the water to discharge into the return pipe." These differences do not require analysis for the purposes if this inquiry, as we believe the above-mentioned disclosure of the water seal and its function, co-operating with the float and other means, clearly anticipates the like provision for a water seal in Van Auken's device, leaving no room for its interpretation as Van Auken's discovery.

The further contentions of the complainants in support of broad claims—(1) that Donnelly's valve was abandoned as worthless after trial in this country, and (2) that the rulings of the Patent Office, in the course of the above-mentioned interference proceedings, interpret the claims broadly—do not require extended discussion. In respect of the Donnelly valve, it appears that the Warren Webster Company used them for some time, but the diaphragms became crystallized in use and many of the valves were taken out for that reason, that they then made a valve of like structure, omitting the diaphragm feature, with adaptations for use of the float, and have used it with entire success, although they have taken license therefor under Van Auken; and this testimony furnishes strong evidence of utility in such provisions of Donnelly applicable to the issue. The rulings referred to of the Patent Office, not only related to a different issue, but are without force in any view for solution of the inquiry into the Donnelly disclosure.

We are of opinion, therefore, that the scope of invention in Van Auken's patent is limited by the above-mentioned prior disclosures, and that the claims are not generic, but must be limited to the particular means in combination specified in the patent and drawings.

1. Are the claims thus defined infringed by the defendant's "Boegen valve," involved in appeal No. 1,818? In several features its departure from the Van Auken specifications is unmistakable and conceded:

(1) Van Auken's inlet conduit is carried up between the valve casing and the float-chamber, as described "above the line of flotation," to discharge the water into the chamber at the top—with various advantages over prior means as pointed out in the specifications and testimony—while the Boegen conduit delivers the water at the bottom of the float-chamber, as shown in the above-mentioned earlier devices of Donnelly and Canfield & Van Auken. Thus Van Auken's improvement (as described) in this particular is not adopted by the defendant.

(2) This difference results in another distinction in their water seals. As stated by complainants' expert, the Van Auken seal "is formed entirely in the conduit and by only a small quantity of water and this seal is entirely separate and distinct from the water in the float-chamber; while in the defendant's device the 'complete seal' against the passage of steam" is not so effected. It is operative only when the float-chamber is partially filled with water, so that the Van Auken "benefit of having the seal entirely undisturbed by the rise and fall of the water in the float-chamber is not present" in the Boegen valve.

(3) The valves differ substantially in the provision for water discharge, as pointed out in the opinion below, as follows:

"Van Auken empties the float-chamber as soon as the water gets high enough to buoy up the float, while defendant keeps the water constantly at a point just below the flotation line. Van Auken discharges only the water of condensation by the rising of the float, while defendant discharges water, floatage, and air by a like operation. The working of the device is in this respect sufficiently different from Van Auken's, and on a sufficiently

different principle, to avoid infringement, even if the claims as to the conduit are to be given a broad construction, instead of the narrowed one here adopted. Defendant's water outlet is entirely new, and accomplishes a somewhat improved result."

(4) The air discharge passage of Van Auken is outside the float-chamber and independent of the float, while the Boegen valve discharges through the float, with consequent benefits which do not require specification.

We believe noninfringement to be clearly established by these departures from the patent device—in the main adaptations from the prior art—and that the complainants' bill was rightly dismissed (appeal No. 1,818) on that ground.

2. We are not advised of the distinctions in the Leuthesser valve from the Boegen valve which were found by the court below sufficient to enjoin the former as an infringement, although dismissing the bill charging infringement in use of the Boegen valve; and we have vainly searched throughout the expert testimony and elaborate briefs submitted on behalf of the complainants for any distinction thereof which would justify affirmance of both rulings. Under the foregoing interpretation of the Van Auken patent and claims, however, we are impressed with no view of the Leuthesser (patented) device, as used by the defendant, upon which infringement can be charged. Its inlet conduit provision is differentiated from Van Auken equally with that of Boegen. While it is true that the water from the radiator is initially forced upwards in the valve near "the line of flotation," it is not there discharged into the float-chamber, but is separated therefrom by an annular form of shield for conduit, which conveys the water to the bottom of the float-chamber, where it is discharged thereto through perforations in the shield. It thus serves alike with the Boegen conduit for an inlet delivery at the bottom, and not for Van Auken's top delivery, although it may be an improvement over either form for the purposes of the float. The outlet provision for discharging the water from the float-chamber is outside that chamber, alike with that of Boegen distinguishable from the Van Auken means and method; and the air discharge is through the float, as in Boegen's device, but differently arranged, for which advantages are claimed over either of the other methods.

Accordingly, we are of opinion that the proof fails to establish infringement—irrespective of any presumption arising from the Leuthesser patent "that there was a substantial difference between the inventions" (Kokomo Fence M. Co. v. Kitselman, 189 U. S. 23, 23 Sup. Ct. 527, 47 L. Ed. 689)—and that the bill charging such infringement must be dismissed.

The decree, therefore, appealed from in No. 1,818 is affirmed, and the injunctional order appealed from in No. 1,810 is reversed, with direction to the court below to dismiss the complainants' bill therein for want of equity.