## MERRILL v. YEOMANS.

Letters-patent No. 90,284, issued to Joshua Merrill May 18, 1869, for improved manufacture of deodorized heavy hydrocarbon oils, construed and held to be good for the superheating coil, with its steam-pipe, &c., referred to in the second claim of the specification, and for the described process by which the oil is deodorized, but not for the product of that process.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

This is a suit by Joshua Merrill, for an infringement of letters-patent No. 90,284, issued to him May 18, 1869, for improved manufacture of two deodorized heavy hydrocarbon oils. The court below found that there was no infringement by the respondents, and dismissed the bill; whereupon the complainant appealed here.

*Mr. Charles M. Reed* and *Mr. Chauncey Smith* for the appellant.

*Mr. Causten Browne, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The appellant in this case, who was complainant in the Circuit Court, obtained a patent, in May, 1869, for a new and useful invention, which relates to the heavy hydrocarbon oils; and he sued the appellees, who were defendants in that court, for an infringement of his patent.

The defendants were dealers in oils, and not manufacturers of them. If the appellant's patent was for a new oil, the product of a mode of treating the oils of that character which he describes in his application, the defendants may be liable; for they bought and sold, without license or other authority from him, an oil which is proved to be almost if not quite identical with the one which he produced. If, however, appellant's patent is only for the mode of treating these oils invented and described by him, — in other words, for his new process of making this new article of hydrocarbon oil, — then it is clear the defendants have not infringed the patent, because they never used that process, or any other, for they manufactured none of the oils which they bought and sold.

The counsel for appellant here maintain that his patent is for the new article, and is not for the process, though he describes it fully, by which that article is produced. The appellees insist, with equal earnestness, that the patent is exclusively for the process by which the new oil is made.

The issue thus presented must be decided solely upon a correct construction of the plaintiff's patent, and the accompanying specifications, in which, as required by the act of Congress, he makes the statement of his invention.

No such question could have arisen if appellant had used language which clearly and distinctly points out what it is that he claims in his invention.

We use the word "claim" as distinct from "description." It must be conceded that the appellant's specification describes with minuteness and precision both the instrumentality and the process by which he makes the oil in question. And in regard to a part of the apparatus which he uses, he makes a distinct claim for its invention; and that is not in dispute here. He also describes with fulness and accuracy the process of distillation by which he produces this oil. He gives the temperature to be used, the mode of heating, the degree of rapidity or delay to be used in distilling, the introduction, and the advantage of that introduction, of superheated steam into contact with the oils to be distilled during the process.

He also describes, though in short terms, the article produced, the main feature of which he declares to be its freedom from the offensive odor which, before his invention, seemed to be an inseparable quality of those oils; and he mentions some of the more important uses to which this deodorized oil is applicable in the arts.

It is fairly to be inferred from this statement, that, if all which is described as new in these specifications is really so, the inventor has a right to a patent for three inventions: —

1. For a modification or improvement in the distilling apparatus.

2. For a new process or mode of distilling heavy hydrocarbon oils, by which they are deprived of their offensive odors.

3. For the product of this new process of distillation; namely, the deodorized heavy hydrocarbon oils fitted for use in the arts.

When a man supposes he has made an invention or discovery useful in the arts, and therefore the proper subject of a patent, it is, nine times out of ten, an improvement on some existing article, process, or machine, and is only useful in connection with it. It is necessary, therefore, for him, in his application to the Patent Office, to describe that upon which he engrafts his invention, as well as the invention itself; and, in cases where the invention is a new combination of old devices, he is bound to describe with particularity all these old devices, and then the new mode of combining them, for which he desires a patent. It thus occurs that, in every application for a patent, the descriptive part is necessarily largely occupied with what is not new, in order to an understanding of what is new.

The act of Congress, therefore, very wisely requires of the applicant a distinct and specific statement of what he claims to be new, and to be his invention. In practice, this allegation of the distinct matters for which he claims a patent comes at the close of the schedule or specification, and is often accompanied by a disclaimer of any title to certain matters before described, in order to prevent conflicts with pre-existing patents.

This distinct and formal claim is, therefore, of primary importance, in the effort to ascertain precisely what it is that is patented to the appellant in this case.

In this part of his application he makes two separate claims, the second of which relates to a modification of the distilling apparatus, and is not in dispute here. Turning our attention to the first claim, we are compelled to say that the language is far from possessing that precision and clearness of statement with which one who proposes to secure a monopoly at the expense of the public ought to describe the thing which no one but himself can use or enjoy, without paying him for the privilege of doing so. It is as follows : —

"I claim the above-described new manufacture of the deodorized heavy hydrocarbon oils, suitable for lubricating and other purposes, free from the characteristic odors of hydrocarbon oils, and having a slight smell like fatty oil, from hydrocarbon oils, by treating them substantially as is hereinbefore described." The word "manufacture" in this sentence is one which is used with equal propriety to express the process of

making an article, or the article so made. "The manufacture of hydrocarbon oils" means primarily the making of hydrocarbon oils. It may mean the thing made also. Are there other words in the sentence calculated to throw light on the meaning of this one?

"I claim the above-described new manufacture of hydrocarbon oils, . . . by treating them substantially as hereinbefore described." It seems to us that the most natural meaning of these words is, that "I claim this new mode of manufacturing hydrocarbon oils, by treating them as hereinbefore described." This is the meaning which would first suggest itself to the mind. If the product is meant, the words "by treating them substantially as hereinbefore described" are useless. They are not only useless, but embarrassing; for, by the well-settled rules of construing all instruments, some importance must be attached to them; and, if they are to be regarded at all, they must either refer to the process of making the oils for which the applicant is claiming a patent, or they are intended to limit his claim for a patent for the product to that product only, when produced by treating the oils in the manner before described.

The counsel for appellant disclaim this latter construction, and allege that the patent covers the oil described, by whatever mode it may be produced. It is necessary to insist on this view, because it is made to appear in the case that the oils sold by defendants were produced by a process very different from that described by appellant.

We can see no reason why the applicant for the patent, if he had in his mind a claim for the article produced, should have intended so to limit his claim. If the article was the discovery which he sought the exclusive right to make, use, and sell, he was entitled to that monopoly, however produced.

If, however, he had in his own mind only a claim for the process of manufacture by which the article was made, then his reference to the mode of treating the oils from which it came was evidently proper and intelligible.

But the language in the specifications aids us in construing the claim. In the sentence next preceding this claim, he says: "It will also be evident to those skilled in the art that my

invention will be used, if the above-mentioned process be worked, to produce the deodorized heavy oils above described from distilled hydrocarbon oils," &c. It is very clear that what he here calls his invention is a thing which produces the deodorized oils, and not the oil itself. So again he says: "From the above it will be obvious that my invention consists in producing heavy hydrocarbon oils, suitable for lubricating and other purposes, and free from the characteristic odor, by distilling from them the volatile matter from which objectionable odors arise." Again he says: "In carrying on my new manufacture of deodorizing heavy oils with this apparatus, I place the oil to be deodorized in the still, and heat it by the fire beneath to the required temperature to commence the operation, the steam being shut off from the coil, and the outlet cock being opened to admit of the expulsion of any water from within the coil." Here the word "manufacture" is used in the sense of the word "process," — a word which could be substituted for it, without a shade of change in the meaning. As it can here mean nothing else but process, we have a definition of the meaning to be attached to it in other parts of the same paper, if that meaning were otherwise doubtful.

But, apart from these verbal criticisms, — all of which are just, and tend strongly to show what was the invention claimed by appellant, — it is impossible to read the four printed pages of specifications, in which appellant minutely describes his invention, without observing that they are almost wholly directed to the apparatus, the mode of using it, and the peculiar process of distillation, by which the more volatile parts of the heavy oils, which contain the offensive odors, are separated from the main body of the oil, pass over in that process, and leave the remainder free from this great drawback in its use in the arts. Why should this be so, if the applicant for the patent was only looking to the products as his invention, — the deodorized heavy hydrocarbon oils? If the oil alone was to be patented, by whatever process made, this elaborate description of one particular process was unnecessary.

A strong appeal is made by counsel to give the appellant the benefit of a liberal construction in support of the patent. Cases are cited in which this court has held that, rather than

defeat a patent where it appears that a valuable invention has really been made, this court, giving full effect to all that is found in the application on which the Patent Office acted, will uphold that which was really invented, and which comes within any fair interpretation of the patentee's assertion of claim.

We are not disposed to depart from this rule in the present case. There is no question here but that the patent is good for the second claim, — for the superheating coil, with its steam-pipe, &c. ; and we are all of opinion that it is good for the process of distillation described in the specifications, by which the heavy hydrocarbon oils are deodorized. It is, therefore, a valid patent for two important matters, well set forth and described. If the patentee is also entitled to a patent for the product of this distillation, and has failed, as we think he has, to obtain it, the law affords him a remedy, by a surrender and reissue. When this is done, the world will have fair notice of what he claims, of what his patent covers, and must govern themselves accordingly.

The growth of the patent system in the last quarter of a century in this country has reached a stage in its progress where the variety and magnitude of the interests involved require accuracy, precision, and care in the preparation of all the papers on which the patent is founded. It is no longer a scarcely recognized principle, struggling for a foothold, but it is an organized system, with well-settled rules, supporting itself at once by its utility, and by the wealth which it creates and commands. The developed and improved condition of the patent law, and of the principles which govern the exclusive rights conferred by it, leave no excuse for ambiguous language or vague descriptions. The public should not be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights. The genius of the inventor, con stantly making improvements in existing patents, — a process which gives to the patent system its greatest value, — should not be restrained by vague and indefinite descriptions of claims in existing patents from the salutary and necessary right of improving on that which has already been invented. It seems to us that nothing can be more just and fair, both to the patentee and to the public, than that the former should understand,

and correctly describe, just what he has invented, and for what he claims a patent.

In consistency with these views, we are of opinion that the appellant in this case has described and claimed a patent for the process of deodorizing the heavy hydrocarbon oils, and that he has not claimed as his invention the product of that process.

*Decree affirmed.*

MR. JUSTICE CLIFFORD dissenting.

I dissent from the opinion and judgment in this case, upon the ground that the invention, when the claim is properly construed, is an invention of the described new manufacture, and not, as decided by a majority of the court, merely for the process.