## MALINA v. GRISMAN.

District Court, E. D. New York. February 15, 1927.

No. 2406.

1. Patents ⬄328—1,572,157, for yarn winding, held valid and infringed.

Morrell patent, 1,572,157, for yarn winding, *held* valid and infringed.

2. Patents ⬄241—Use of different process will not prevent infringement, where product is identical.

Use of different process from that disclosed in patent does not prevent infringement, where product is the same, and has definite characteristics by which it might be identified.

Decree affirmed 20 F.(2d) 409.

Paul Kolisch, of New York City (Fred A. Klein, of New York City, of counsel), for plaintiff.

Lhowe & Obstfeld, of New York City (Edward M. Evarts, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a suit in equity in which the plaintiff seeks to restrain by injunction the alleged infringement by the defendant of patent No. 1,572,-157, issued by the United States Patent Office to Michael Morrell, assignor to plaintiff for Yarn Winding, dated February 9, 1926, and to recover damages. The defense is invalidity and noninfringement, the title of plaintiff to the patent not being in issue.

The problem which was presented to the patentee has to do with knots. Cotton, artificial silk, or other yarn, after being dyed and subjected to other chemical treatments, is first wound from the skeins onto wooden spools; the torn ends or skein ends being knotted together. From the wooden spools the yarn is wound onto paper cones for use in a knitting machine. This winding is accomplished by means of a high-speed winding machine, which, before the invention of the patent in suit, produced a suitably shaped winding with an even surface, described as "straight side" winding.

On the winding machine is placed a "slub" or knot catcher, and whenever a large knot is caught and the yarn broken the machine is adjusted to stop. The operator ties up the broken ends by means of a small weaver's knot. That this breaking of the yarn during knitting was a source of great annoyance and waste is apparent, when it is considered that in the usual pound cone of artificial silk or rayon yarn there are from 30 to 50 knots.

This problem cannot be better described than in the words of the patentee, as found in the specifications:

"In the process of preparing yarns for industrial uses, the yarn is wound on a core from which it must be later unwound by the machine equipped to make the ultimate product, or into suitable balls or packages. During the reeling or winding operation, the yarn often breaks, and it is necessary for

the operator to knot together the broken ends. In unwinding the yarn from the core, it is likely to catch in these knots and tear. This danger exists, particularly in the case of silk, artificial silk, or other fine and fragile yarns. In order to prevent the yarn from catching on knots, it has been the practice to wind the yarn on a cone-shaped core, and to place all knots at one end of the core in such a manner that all the knots be in the top or bottom stratum of the winding. While this method reduces breakage during the unwinding, it has several drawbacks. One of the disadvantages is that it is rather tedious, and therefore expensive, to locate the knots in the end stratum. Further trouble arises from the fact that when, after the tying of a knot, the winding operation is continued, the knot is likely to slip into a lower stratum and form an obstacle in the unreeling of the yarn.

"It is the object of the present invention to overcome these drawbacks by producing a package of yarn preferably, but not necessarily, in the form of yarn wound on a cone-shaped core in which the knots may be definitely located in a level below that of yarn sections likely to catch in such knots; i. e., yarn sections located in the same or adjacent layers."

Many patents were offered in evidence by the defendant to show the prior art. In some of them are disclosed cones with grooves at the top or bottom, but in none of them is there even a suggestion of a solution of the problem which the patentee was attempting to solve; in fact, the impression made on my mind by the patents offered tends rather to magnify than to minimize the invention of the patent in suit.

The only reference about which any testimony was given by the defendant's witnesses was patent No. 1,391,961, to McKean, dated September 27, 1921. This patent discloses:

"A cop cone having a gradual taper extending for a distance from its larger end, said gradual taper terminating at the smaller end of the cone in a steeper taper, preferably straight, although it may be slightly convex or slightly concave if so desired."

The word "knot" does not appear in this patent, and knots placed at the taper end of this cone would not be out of the way any more than in the usual "straight side" tapered one. In the defendant's cone a sudden depression is found at the upper end, within which the knots are placed, and not a steeper taper, as in the McKean cone.

The prior art, as shown by the patentee in the specifications, simply taught the placing of the knots at one end of the cone in the top or bottom stratum of the winding. This was not at all satisfactory, but, being the best that was obtainable, had to be accepted.

The patentee offered as his solution of the problem the production of a package of yarn preferably, but not necessarily, in the form of yarn wound on a cone-shaped core, in which the knots may be definitely located in a level below that of yarn sections likely to catch such knots; i. e., yarn sections located in the same or adjacent layers. This he accomplished in the preferred embodiment of his invention; as patentee says:

"By producing a winding of yarn in each layer of which certain sections of the yarn are below the general level of the layer; e. g., by producing a groove intermediate the ends of the winding."

This groove is produced by bearing against the yarn during its winding. In the preferred embodiment of the invention, the patentee says:

"Groove 3 may be formed in the layer of yarn on core 2 by using a pointed instrument 4, which is pressed towards the cone 2 while yarn is being wound thereon. As the yarn is passed back and forth during its winding on the cone 2, when it passes under the tool 4, it will be flattened or pressed more tightly, and in the ultimate product a depression or groove will be found at the point where the tool bore against the yarn."

The patentee points out in the specifications that the end of the pointer 4 must not bear against the yarn, so as to injure it. He states that one way of guarding against this is by rounding the end of the pointer, and that another way is to mount a roller 20 on a pin 21 at the end of the pointer 4. He further says: "The width of the roller 20 will determine the width of the groove 3."

The patent in suit is for both a product and a method. Windings of cotton, artificial silk, or other yarn, on paper cores or cones, was old in the art, and cores or cones, with grooves at the top or bottom, were known, but never had it been even suggested, in any of the patents offered in evidence by the defendant, that the knots could be placed in such grooves.

The only teaching of the prior art had been to place the knots at one end of the core. This had proven unsatisfactory, but nothing better had been discovered until the patentee of the patent in suit invented the product with the groove in which the knots

were placed, and the method of accomplishing his invention.

The claims of the patent in suit are as follows:

"1. As a new article of manufacture, a yarn winding in which in each layer certain portions of the yarn are below the general level of the layer, the lowered portions affording a depression within which knots are placed.

"2. As a new article of manufacture, a yarn winding having layers in which certain sections of the yarn are below the general level of the layer, the lowered sections affording a depression within which knots are placed.

"3. As a new article of manufacture, a grooved winding of yarn with the knots located in the groove.

"4. As a new article of manufacture, a cone of yarn having a groove within which the knots are confined.

"5. As a new article of manufacture, a cone of yarn having a groove at right angles to its axis and intermediate its ends, the knots in the yarn being confined in the groove.

"6. The method of winding yarn on a core which consists in bearing with a tool against the core during the winding of the yarn thereon to produce a groove in each layer of yarn, and placing the knots by which yarn ends are fastened together within the confines of said groove."

The patent in suit is not a pioneer patent, but is a great improvement, and marks a distinct advance in the art, and as such is entitled to a range of equivalents sufficient to protect the great advance in the art made by the patentee. To say that what the patentee did was what any skilled workman could have done can be sufficiently answered by calling attention to the fact that, notwithstanding cones with grooves were known, and the troubles with knots were great, yet no one for 20 years had been able to solve the problem until the plaintiff invented the product and method of the patent in suit.

However simple it may seem to us now, the knot problem was not solved for 20 years. The patent in suit is valid. The additions made to the winding machine used by the defendant were made by Mr. Napp, who also had made the so-called special polished point cones used by the defendant, but these were not the result of his independent labors in an effort to solve the knot problem. All that Mr. Napp did was done after the invention of the patentee of the patent in suit had been shown to him and he realized that it was a good thing.

That the depression or groove in the so-called special polished point cones is at the top, and is wider than shown in the drawings of the patent in suit, does not, in my opinion, relieve the defendant of infringement, because, as I read the patent in suit, the width of the groove is not fixed, and the groove may as well be located at the top as at any other point. The fact that knots were placed at the top, in the prior art, did not teach that knots could be prevented from occasioning loss and annoyance by placing them in a groove or depression at that point.

Keeping in view the invention of the patent in suit, which was the placing of the knots in the groove, no suggestion of which can be found in the prior art, I do not see how the defendant can escape being found to infringe claims 1 to 5 of the patent in suit, for the product. The most that defendant could claim, if he could make any claim of invention of the so-called special polished point cone, would be that it was a mere improvement; but that would not relieve him from infringement, because the use of such cone would be valueless without employing the invention of the patent in suit, by placing the knots in the depression.

The contention of the defendant that the patent in suit is invalid, because the patentee did not speak of tension in combination with the bearing tool, and that plaintiff has abandoned the patent, and that the same is inoperative, in my opinion finds no support in the evidence. On the contrary, the highest tribute to the patent in suit has been paid by the defendant, because imitation is the sincerest form of flattery.

Prior to 1926, defendant was selling only "straight side" cones, and now about 60 per cent. of his output have the depression. Call it what you will, a groove or a depression, that which was found on defendant's cones is what was invented by the patentee of the patent in suit, and it is only begging the question for the defendant to contend that it can escape infringement simply because some of its employees, through lack of skill, fail to utilize the groove or depression as a place for placing as many knots as possible.

The patent in suit neither says nor intimates in the specification or claims that all knots will go into the depression or groove, but only that the ones caught by the operator shall be so placed. The groove or depression is created in defendant's cones for the purpose of caring for the knots in the manner pointed out in the patent in suit, and the product produced is the invention of the patent in suit. This clearly appears from de-

fendant's cones in evidence, his advertisements, and the oral testimony.

Defendant contends that the depression, as he terms it, in the cones wound by him, is not intermediate its ends. This contention cannot, in my opinion, be sustained, because, as I see it, the groove or depression in defendant's product is intermediate its ends. But, if the contention could be sustained, it would not relieve the defendant from infringement of claims 1, 2, 3, and 4, because that limitation is found only in claim 5. All the product claims 1, 2, 3, 4, and 5 are infringed.

The chief accomplishment sought by the patentee was the product, the method of producing it being secondary, because the patentee in the patent in suit said: "However, it will be obvious to those skilled in the art that various other methods may be adopted without departing from the spirit of the present invention." The product claims are for a product which was new, independent of the process, and had definite characteristics by which it might be identified.

[1, 2] Even if it should be held that the method is not infringed by the defendant, yet the claims on the product are infringed by the defendant's product, notwithstanding it may have been made by a different process from that disclosed in the patent. Rubber Co. v. Goodyear, 9 Wall. 788, 796, 19 L. Ed. 566; Merrill v. Yeomans, 94 U. S. 568, 571, 24 L. Ed. 235; Matheson v. Campbell (C. C. A.) 78 F. 910, 917; General Electric Co. v. Laco-Philips Co. (C. C. A.) 233 F. 96. As I have held, the patent is valid both for the product and the method.

Defendant employs a winding machine manufactured by the Universal Winding Company, of Boston, Mass., and although there is a button guide on such machine, which travels back and forth and touches the yarn or silk, as wound on the cone, this would not produce the groove or depression in the winding, and would not infringe, except for the fact that the defendant has placed on that machine a small plate, fastened to the frameback, the thickness of which plate is equal to the depth of the desired groove.

When the guide, traveling back and forth on the frameback, reaches the plate—that is, when the guide is opposite the place where the groove or reduced end is to be produced—it is forced forward by coming into contact with the plate, and presses against the yarn or silk as it is laid in the groove or reduced end, and thereby maintains the groove through the thickness of the winding.

The defendant's machine is different in form from that of the preferred machine of the patent in suit, which discloses a pointer 4 which is pressed toward the cone while the yarn is being wound thereon, and maintains the groove or depression, but it does not seem to me that the defendant can thereby escape infringement.

The method described in claim 6 "consists in bearing with a tool against the core during the winding of the yarn thereon to produce a groove in each layer of yarn. * * * *" This, it seems to me, is the method employed by the defendant, because it is by the placing of the plate on the frameback of his machine that the depression or groove on the cone is produced in winding, by bearing with the button guide (a tool) against the core.

In any event, it would require but a very limited application of the doctrine of equivalents to hold that the button guide, when forced forward by the plate to form the groove or depression, is the equivalent of the pointer 4 of the patent in suit, and claim 6 is infringed. The patent in suit is valid and infringed.

A decree may be entered in favor of the plaintiff against the defendant, as prayed for in the bill of complaint, with costs and the usual order of reference. Settle decree on notice.