## DYER v. SOUND STUDIOS OF NEW YORK, Inc.

### No. 6034.

Circuit Court of Appeals, Third Circuit.
June 20, 1936.

As Modified on Denial of Rehearing
Sept. 30, 1936.

Samuel E. Darby, Jr., of New York City and E. Ennalls Berl, of Wilmington, Del., for appellant.

Stephen H. Philbin, F. T. Woodward, and J. C. R. Palmer, all of New York

432

City, and William G. Mahaffy, of Wilmington, Del., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and WELSH, District Judge.

BUFFINGTON, Circuit Judge.

In the court below Frank L. Dyer, grantee of patents Nos. 1,570,297, 1,726,-546, and 1,783,498, charged the Sound Studios of New York, Inc., with infringement of certain claims thereof. The case was defended by the Western Electric Company. After final hearing, the court dismissed the bill as to all three patents; whereupon plaintiff took this appeal.

The case concerns the making of long-time records on phonograph disks, the plaintiff claiming he invented a new apparatus by which he could make a phonograph record play for forty-five minutes. The defendant makes a record which plays fifteen minutes.

The case was considered by the court below with that thoroughness and detail which mark the work of the trial judge, and, after a study of the art, we find ourselves in accord with his action in dismissing the bill. His opinion is so comprehensive in breadth and so specific in detail that by reference thereto we avoid needless repetition in an opinion by this court.

Without referring to the many questions confronting the plaintiff, we feel that one basic fact, if established, is vital to the plaintiff's case, and this one fact we now consider.

It is hornbook patent law that a patentee cannot claim a general idea such as, for instance, the making of long-time running disk records; but his invention, if invention it be, consists in the means he discloses and embodies in his claim to accomplish such long-time work of the disk.

It is a commonplace in the art to say that the time-running length of a disk depends on two factors, namely, the number of its grooves and the disk's revolving speed. Now the specification of plaintiff's first patent is based on the disclosure inter alia, of the width of his groove. In his specification he recognizes that "it is the present practice to make these record grooves substantially .005 inch in width."

Referring to such prior art, his specification says: "These limitations as to width of grooves, width of lands, and surface speed make it impossible with the record disk of a diameter of 10 or 12 inches or thereabouts, or a corresponding cylinder, to secure a sound record of much more than 3 minutes in length, with corresponding restriction as to character and subject-matter." He then goes on to state: "What I propose, in brief, is to make a record groove of microscopic size, preferably of the order of .001 inch in width, or at least substantially and materially narrower than any talking machine record of which I have knowledge. The depth of the groove is not important, so long as it shall be in reasonable proportion to the width. I have frequently cut record grooves of the order of a thousandth of an inch in width and have found that the ordinary recording material is sufficiently uniform and amorphous to permit such a groove to be cut with great smoothness and sharpness." He then adds: "The sounds which I record in such a groove of extreme narrowness and formed at low speed are so controlled or adjusted that the recorded amplitude thereof will bear substantially the same ratio to the surface speed as with existing practice; that is to say, if the maximum amplitude of sounds as recorded on present records is of the order of .001 inch, then with my improved record the recorded amplitude will be approximately .002 inch." He further states: "Referring first to Figs. 1 and 3, 1 represents a small portion of an ordinary record having a record groove 2 therein; ordinarily this record groove is about .005 inch in width."

Explaining the significance of his figures, the patentee says: "Referring now to Figs. 2 and 4, the record groove 3, shown therein is illustrated as being one-fifth the width of the ordinary groove and one-fifth the relative length thereof; that is to say the groove is .001 inch in width and the surface speed at which it is formed is approximately eight inches per second, average; its depth is substantially proportional to the standard record shown in Figs. 1 and 3. With these proportions the record, as shown in Fig. 4 has one twenty-fifth the area of the standard record and hence the time of reproduction is increased twenty-five fold."

The specification refers to possible variations from these dimensions, but it will be observed that the variations contemplate a reduction, and not an enlargement, of width space. Thus the specification says: "It is of course not necessary that these dimensions shall be precisely followed: by reducing the width of the groove and proportionately reducing the surface speed the time of reproduction is increased in pro-

portion to the product of the two factors: a record of one-third the usual width and one-third the speed will represent a nine-fold increase in time, and so on. It is important that there should be a substantial reduction in the width and surface speed as compared with present practice, since the opportunity of exterior amplification is practically unlimited and the important consideration is to increase the time of reproduction at least several fold so as to thereby extend the talking machine into fields that are now unthought of."

The specification further states: "While I have specifically described my improved talking machine record as having a groove of the laterally undulatory type, it will be understood that the invention may be carried out with records having hill and dale grooves, it being only necessary to properly proportion the width, length and amplitude as herein described."

From the above it is clear that the patentee, in effect, said to the art: So far as disks with a groove width of .005 are concerned, you are free to use them; and it is equally clear that the means by which he planned to obtain long time-running disks was by the use of his so-called microscopic grooves of .001 inch. The characteristic width of microscopic groove (approximately .001 inch) he carried into claims 4, 5, and 6 in suit, stating in them: "In the art of reproducing sounds a talking machine record having a microscopic groove in width, length and amplitude as compared with existing practice," but he also carried into claim 8 by substantially similar words, to wit: "In the art of reproducing sounds, a sound record groove of microscopic width," for this in the light of the specification means the groove width described therein, to wit: "What I propose in brief is to make a record groove of microscopic size, preferably of the order of .001 inch in width, or at least substantially and materially narrower than any talking machine record of which I have knowledge." Indeed, in point of fact, as appears from the specification, Dyer's microscopic groove was the gist of his disclosure and the foundation on which his alleged invention must rest, for, unless the microscopic groove of his specification is read into his eighth and other claims, they are wholly without inventive character.

From these considerations it is apparent that the monopoly of his patent did not, and was not meant to, embrace anything done in disk construction where the groove was .005, but that it was confined to the microscopic width indicated therein. The scope of his patent was for him to state, in accordance with Revised Statutes, § 4888 (35 U.S.C.A. § 33), which requires that the patentee "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." The wisdom and reason for such a course is clear, for, as stated in Merrill v. Yeomans, 94 U.S. 568, 573, 24 L.Ed. 235, "the public should not be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights," it being also declared that "it seems to us that nothing can be more just and fair, both to the patentee and to the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent."

In this case the patentee, as we have said, has left the art free to use a disk with a groove width of .005, and as the defendant has a groove of even greater width, its method of securing fifteen minute time-running disks is not covered by the plaintiff's patent.

For these reasons, as well as for the many cogent objections which the court in its opinion has amplified, we are clear the court below was right in dismissing the bill so far as the first patent is concerned.

 As to the second and third patents, we find ourselves in accord with the trial judge, and for the reasons set forth in his opinion we affirm the decree holding them invalid.