**JOHN I. PAULDING, Inc., v. LEVITON et al.**

District Court, E. D. New York.   Feb. 19, 1930.

No. 3034.

Manasseh Miller, of Brooklyn, N. Y., and Francis J. V. Dakin, of Boston, Mass., for plaintiff.

Gifford, Scull & Burgess and Charles W. Mortimer, all of New York City, for defendant.

SLICK, District Judge.   ■ *Descriptive.* —Plaintiff brings his suit in equity against defendants charging infringement of patent No. 1,586,367, issued to Frank E. Johnson May 25, 1926, and assigned by Johnson to the plaintiff.  The patent to Johnson, assigned to the plaintiff, was for an electric lamp socket. Defendants allege that the patent is invalid and that they do not infringe.

Both plaintiff and defendants manufacture electrical supplies and electric lamp sockets.  The patent relied on by plaintiff relates to means for locking two parts of an electric light socket together.  The two parts of the socket are, first, the cap, second, the shell, and the patent relates to the methods for locking the cap on the shell and preventing longitudinal separation and circumferential rotation of cap and shell.

Electric lamp sockets, composed of two parts, cap and shell, have been in commercial use many years, and millions of sockets of this construction have been manufactured and sold.  Many different forms of sockets composed of two parts have been made.  All are of the same general character, varying, however, in the methods for locking the shell and cap together, and preventing separation and rotation.

The patent in suit covers methods and means for locking the cap and shell together and preventing longitudinal separation and

circumferential rotation. At the time the patent was issued the prevailing type of electric lamp sockets was one consisting of cap and shell, the flange on the cap having a series of openings called "windows." They were twenty in number, and these windows or openings in the flange of the cap, co-operating with means provided on the shell, prevented separation and rotation. The socket manufactured under this arrangement was called by the trade "the new wrinkle." This form of socket had a ring which was called a concealing ring that was forced down over the flange of the cap, strengthening the flange and presenting a plain, polished surface.

*The Patent.*—The patentee had in mind to provide a means of locking the cap and shell together and preventing longitudinal separation and rotation, and to so construct the flange of the cap that it would not be weakened without the use of the aforesaid concealing ring, and would be attractive in appearance, and at the same time reduce the cost of manufacture.

The application contains four claims. The fourth claim being the most comprehensive, reads as follows:

"An electric socket comprising a cap member, having a plain annular imperforate flange provided with a series of closely associated equally spaced inwardly extending locking projections and a shell member having its end provided with longitudinal corrugations corresponding in number and arrangement to the series of locking projections on said cap and being provided with two outwardly extending projections on opposite sides thereof adapted to cooperate with the locking projections on said cap to lock said members together, said locking projection on the cap and the longitudinal corrugations on the shell having engaging shoulder portions parallel to the longitudinal axis of the shell for preventing relative rotary movement between the parts."

Claim 2 describes the cap as having a "plain, annular, imperforate flange, provided with a series of equally spaced cuts around the same."

Claim 3 describes the same flange as "plain, annular and imperforate with equally spaced cuts about the same."

*Words "Plain" and "Imperforate."*—Defendants contend that their device does not have a cap with a plain, imperforate flange. In fact, their contention is that the flange on plaintiff's cap manufactured under the patent is neither plain nor imperforate. The flange is described in the patent as plain and imperforate with slits cut around the flange and the metal pressed inwardly so as to form shoulders parallel with the longitudinal axis of the cap.

The wording of a patent, like that of any other written instrument, is to be construed having in mind the description which the patentee is endeavoring to depict. A plain and imperforate flange, having depressions and slight openings or cuts, at once gives the impression that the flange is plain and imperforate with certain exceptions. It is plain except that it has regular, equally spaced depressions. It is imperforate except that it has a series of cuts or slits. The real invention described in the specifications is aptly and intelligently pictured in the claims, and any one reading the specifications and claims will have slight difficulty in determining what the language means. Words of this nature are construed in the patent law in the light of the description evidently intended.

"A patentee is at liberty to supply his own dictionary." Kennicott Co. v. Holt Ice & Cold Storage Co. (C. C. A.) 230 F. 157, 160.

*Validity and Scope of Patent.*—The validity of a patent is to be ascertained, not by considering the object to be attained, but by considering the means claimed and embodied in the patent to accomplish the purpose desired. Knapp v. Morss, 150 U. S. 221, 14 S. Ct. 81, 37 L. Ed. 1059.

The parties are in agreement that it was the form of the locking projections on the cap, and specifically the locking shoulders on the cap projections parallel to the axis of the cap, which enabled Johnson (plaintiff's assignor) to accomplish the desired result. The projections on the cap served to prevent separation of cap and shell, and at the same time to prevent rotation by co-operating with the corrugations on the shell,—two functions of the cap-flange projections. This was a new and distinct departure from the prior art.

It is to be noted that Johnson, the patentee, did not limit the construction of the projections on the flange of the cap in his invention. He points out that the projections are preferably to be made around the flange by making a series of short cuts and then pressing the material inwardly so that the end of the material pressed inwardly will serve as a locking shoulder, and the sides of the inwardly pressed material will form shoulders. He describes a preferred form of doing this work wherein a series of partially sheared inwardly pressed projections are formed on the cap flange, these partially

sheared inwardly pressed projections to correspond in number to the depressed portions on the shell. He then provides that these projections are preferably formed by making a straight cut and then pressing the material inwardly. He is not limited, however, to this construction. Any other construction that would be the equivalent of that described in Johnson's patent would read upon his patent. Any other device that would prevent separation of cap and shell by means of a latching surface similar or equivalent to that described by Johnson, and at the same time prevent rotation by means of shoulders similar or the equivalent to those described by Johnson, would read upon his patent.

In order that the rights of a patentee to equivalents be restricted, he must have made it clear that he intended to limit the scope of his invention by clear and unmistakable language—by the use of words capable of no other construction. Johnson not only did not make it clear that he intended to limit the scope of his invention, but he made it clear that he did not intend to be limited to any particular construction.

The substantial equivalent of a thing is the same as the thing itself under the patent law, and the law allows a patentee the benefit of the doctrine of equivalents, whether claimed in the patent or not. McCormick Harvesting Mach. Co. v. C. Aultman & Co. (C. C. A.) 69 F. 371.

Defendants' cap has shoulders which are parallel with the longitudinal axis of the cap. Whether these shoulders are angular and not sheared, or whether they are formed by shearing the metal along the side of the projections, makes no difference. A shoulder that performs the function of preventing rotary movement is no less a shoulder, even though the sides are sheared, producing a shoulder with a cut metal edge. However it is made, it still remains a shoulder, and its function in defendants' device and under the patent is to prevent rotation.

The claims of plaintiff's patent should not be and are not limited in the scope of their construction. Every form of construction which produces an angular shoulder on the flange of the cap that prevents rotation of cap on shell by engaging with angular shoulders on the shell is included in the claims of the patent in suit. In plaintiff's construction the corrugations "discourage" rotation of the cap on the shell to the extent that in actual practice they prevent rotation. Whether it takes 168 pounds or 16 pounds to rotate the cap on the shell, as testified to by Mr. Ray, is not material. The cap, so far as the evidence discloses, never rotated when installed and in use, and rotation is prevented by the discouragement of the corrugations.

*Infringement.*—Defendants claim they accomplish a "diametrically opposite result" from that of plaintiff, and by "entirely different means from that employed in the patent," and hence do not infringe. Both devices accomplish the same result, namely, both produce an electric light socket composed of a cap and shell that will neither separate longitudinally nor rotate circumferentially. Plaintiff prevents longitudinal separation by the use of four raised places located two on either side of the shell, which engage four of twenty locking projections placed on the flange of the cap. These locking projections have slits or cuts at the top, and the metal is pressed inwardly causing a sharp metal edge, which locks over the raised places on the shell. Defendants prevent longitudinal separation in exactly the same way and by exactly identical means. Plaintiff prevents rotation of cap on shell by the use of corrugations on cap and shell which fit or nest so closely that, while rotation is not positively prevented, it is "discouraged," or resisted sufficiently to prevent rotation for all practical commercial purposes. Defendants, while denying strenuously that they rely on corrugations to prevent rotation, nevertheless have the corrugations on cap and shell, very, if not quite, similar to those used by plaintiff. Defendants claim that the raised portions on the flange of their cap have cut metal shoulders. Plaintiff's raised portions are described in his patent as locking projections having shoulder portions, which engage the shoulder portions of the corrugations on the shell.

Defendants have all these specifications, but say they do not depend upon the shoulders on the cap engaging with the shoulders of the corrugations on the shell, to prevent rotation of cap on shell. They claim that the cut metal edges of the key slot in engagement with the shoulders of the locking device on the cap, and not the engagement of the shoulders of the locking device on the cap with the shoulders of the corrugations on the shell, prevent rotation.

If defendants do not put any dependence upon the shoulders in their cap engaging with the raised portions or corrugations on the shell to prevent or "discourage" rotation, then why do they have these corrugations? Surely eliminating these corrugations would simplify the manufacture of the shell. Defendants say these corrugations provide "clearance spaces," to prevent contact between the

shell and cap tongues, but they do not explain why this contact between tongue and shell is not desired, or point out any harm that would result by such contact. Defendants attempt to explain away this inconsistency by saying they desire to use this form of shell and have a perfect right to use it. Evidently they have a right, so far as plaintiff is concerned, to use any form of cap or shell they may desire to use, so long as they do not infringe upon plaintiff's rights under his patent, but simply making the bald statement that defendants have a right to use a certain form of device is not convincing.

*Prior Art.*—Defendants contend (page 2 of their reply brief) that, "Johnson's contribution is much closer to the prior art, both in form and function, than it is to defendants' structure," but on page 12 in their original brief, defendants say, "The defendants' structure in every essential respect is identical in function with the devices of the art prior to the patent in suit." If plaintiff's device is closer to the prior art than it is to defendants', and defendants' structure is identical in every respect with the prior art, how close is plaintiff's structure to the prior art, and how close is defendants' structure to plaintiff's? Plaintiff, defendants, and the devices of the prior art all employ similar means for preventing longitudinal separation of cap and shell. Plaintiff and defendants both use similar means for preventing rotation of cap on shell. Plaintiff and defendants both have equally spaced projections on the inner surface of the flange of their cap. These projections prevent longitudinal separation by latching over small raised places on the shell, and at the same time have angular shoulders, which, in co-operation with corrugations on the shell, prevent rotation.

Defendants at the trial put in evidence copies of nine prior patents, which, in the order of their issuance, are as follows:

Patent No. 844,829, February 19, 1907, to Peterson.

Patent No. 872,283, November 26, 1907, to Goodridge.

Patent No. 907,782, December 29, 1908, to Goodridge.

Patent No. 916,812, March 30, 1909, to Weber.

Patent No. 13,227, April 18, 1911, reissued to Goodridge.

Patent No. 1,121,348, December 15, 1914, to Goodridge.

Patent No. 1,247,492, November 20, 1917, to Benjamin.

Patent No. 1,325,875, December 23, 1919, to Limont.

Patent No. 1,386,626, July 5, 1921, to Hawkins.

Many of these patents have very little similarity to the patent in suit, and they will be noted but briefly. The Peterson patent was for a socket of the cap and shell variety, but of an old type called the "bayonet" type. The patent to Benjamin has projections extending inwardly which, when locked, prevent rotation. That to Limont is quite similar in appearance with the cap made under the Goodridge invention, with the edge of the cap turned up to perform the same function as the ring in the Goodridge patent, No. 1,121,-348. The Hawkins patent is a device to assist in attaching the shell to a shade holder by lining it up with the holder. The Goodridge patents, beginning with No. 872,283, had openings or windows in the flange of the shell to engage with latching means on the shell to prevent longitudinal separation, and corrugations on both shell and cap to prevent circumferential rotation of the cap on the shell.

Goodridge, No. 872,283, appears to be the first patent of this kind with symmetrical openings in the cap to prevent separation. This is the basic patent that defendants seem to rely on most strongly to establish the state of the prior art in contravention of the validity of plaintiff's patent as showing lack of novelty in plaintiff's invention. This device did not work satisfactorily, as rotation was not sufficiently discouraged to be prevented.

The device under Goodridge, No. 907,782, never went into general use on the market, and Goodridge, No. 1,121,348, like other Goodridge devices, had openings, windows, on the flange of the cap, with a ring to conceal the opening and strengthen the cap. The structure under this patent is quite similar to that of the other Goodridge patents.

The question then arises: Did Johnson improve materially on the prior patented art? If he made only a slight step in advance and discovered a new method of accomplishing a desired result, he is entitled to his invention. As soon as his patent was issued, there was a demand for the manufactured article, following the methods of construction laid down in the patent. Other manufacturers sought and obtained licenses. All this is persuasive on the question whether Johnson really invented something. He produced an electric lamp socket with a cap and shell of the new wrinkle type, the flange of the cap having projections on the inner surface, that

prevent both separation and rotation. This was new in the art. Plaintiff has manufactured and put on the market a lamp socket, which follows in every detail the claims of the Johnson patent. Defendants manufacture and sell a lamp socket that, to the naked eye at least, is an exact duplicate of plaintiff's socket. They look alike; they operate in the same way; they produce the same results by the same means; the cap and shell of one are interchangeable with cap and shell of the other; if the names are removed it is very difficult to distinguish one from the other; they both read upon the claims of the patent in suit.

*Anticipation.*—Defendants offered and were permitted to introduce evidence tending to show the manufacture of lamp sockets similar to plaintiff's device prior to the issuance of plaintiff's patent. Defendants made it plain that this evidence was not offered to prove anticipation. The evidence was admitted for what it was worth, as bearing on the history of the prior art, and with the thought that it might aid the court in construing the patent in suit. The court had at the trial, and still has, grave doubts as to the admissibility of such evidence. It was admitted on the theory that, if admissible for any purpose, it was not rendered inadmissible by the fact that it could not be considered on the question of anticipation. That it cannot be considered as tending to prove anticipation, there is no doubt. Counsel for defendants at the trial stated and reiterated that it was not offered for that purpose, hence it should not, cannot, and will not be considered as having any bearing on or as tending to show anticipation.

[6] Furthermore the evidence comes under the well-known rule that it must be convincing, as some cases say, "beyond a reasonable doubt." This evidence is vigorously denied, and is far from convincing. In the absence of documentary evidence, plaintiff would seem to have the preponderance on an issue where defendants have the burden of satisfying beyond a reasonable doubt.

Defendants invoke the rule often laid down in the decisions under the law of patents: "That which infringes if later, would anticipate if earlier." This rule simply means that if, after a patent has issued, a given device would infringe upon it, the same device, if patented prior to its issuance, would anticipate. No notice was given by defendants as required by the statute on the subject of anticipation, and therefore the evidence introduced tending to show anticipation cannot be considered for that purpose.

The four claims of the Johnson patent, now owned by the plaintiff, are clearly infringed by the device manufactured and put on the market by defendants.