**PARKER et al. v. PACIFIC BOX CORPORATION, Limited (EBY MFG. CO., Intervener).**

**No. 3586.**

District Court, N. D. California, S. D. Aug. 23, 1935.

916

Richard J. Cook, of Seattle, Wash., and Wm. S. Graham, of San Francisco, Cal., for plaintiffs.

Charles E. Townsend, of San Francisco, Cal., for defendant.

LINDLEY, District Judge.

Plaintiffs brought suit against the Pacific Box Corporation as user of a bundle tying machine, hereinafter designated as the Eby machine, built according to the teaching of Dunn and Eldridge, alleging infringement of claims 43, 44, 45, 46, 47, 48, 49, 52, 55, 60, 67, 75, and 76, of patent No. 1,875,259, and of claims 7, 12, 13, 65, 66, 69, 70, 76, 85, 86, and 87, of patent No. 1,875,260, both issued to Parker on August 30, 1932. Eby Manufacturing Company, manufacturer of the Eby machine, intervened and defended the action. The original defendant and the intervener will be designated hereinafter as defendants.

The first patent covers a machine with duplex revolving arms for the purpose of carrying two wires around a bundle simultaneously and tying both of the same. One machine, it is claimed, was built under this patent, but the device never came into commercial use. Defendants contend that it is similar to, and follows the teaching of Thompson, No. 1,152,670, issued September 7, 1915. It utilizes a so-called swinging arm for winding the binding material about the package.

The second patent makes use of a ring gear for winding, and is alleged by defendants to follow the teachings of Evans, reissue patent No. 16,292, issued March 16, 1926. I shall refer to these patents as '259 and '260.

Defendants contend that the invention of Eby's machine by Dunn and Eldridge antedated each of Parker's patents. The original application of Dunn and Eldridge was filed July 6, 1922. The application for patent '259 was filed November 1, 1921; that for '260 on March 12, 1925. It becomes material, therefore, to determine the priority of the respective alleged inventions. Dunn, a mechanical engineer employed by defendant Eby, and applicant in 573,205, filed July 6, 1922, and in 699,734, filed March 17, 1924, testified that he went into the employ of the Eby Company in October, 1920, as sales engineer; that in December of that year he first began to work upon a binding and tying machine. He and his associate did not agree, and he so reported to Eby, who, a week or ten days later, asked him to design a tying machine. The witness immediately went to work upon the problem, and reported shortly that he had worked out a conception entirely different from that of the prior art and entailing much more expensive construction. He was instructed to continue on this. The witness testified that all this occurred in the month of December, 1920. He proceeded with the work, co-operating with Mr. Eldridge, and produced an operating machine in the summer of 1921 and completed it to his satisfaction in February, 1922. Thereupon he endeavored to introduce the machine to the trade. Two corporations ordered the machine, and in October, 1922, the witness took two to Honolulu and there demonstrated them. They were accepted and paid for. In the meantime the trade had been circularized throughout the country, beginning as early as March 24, 1922. At that time there was

no successful machine of the same character on the market other than the Eby machine. Mr. Libbey, an officer of one of the purchasing corporations, testified that the Eby machine was the first practical machine he saw.

When Dunn was in Honolulu in 1922, he had a conference with White, manager of one of the purchasing corporations, who suggested that he preferred to have a flat knot rather than that produced in the machine purchased. Upon his return to San Francisco, Dunn went to work on this phase and rearranged the parts so as to produce a flat knot machine. The preliminary drawings were started in December, 1922, and completed in the spring of 1923. These dates are not entirely a matter of personal knowledge, but are corroborated by certain documents received in evidence, including drawings, invoices, and documents. It is definitely established that the first Eby flat knot machine was completed June 1, 1923. The first sale of such machine was December 27, 1923, and it was delivered February 27, 1924. The idea of the flat knot, therefore, came into Dunn's mind in the fall of 1922, and in due course appeared in the machine last mentioned. The flat knot machine, Dunn said, was not sooner pushed on the market because the company had several of the first machines under construction and in process of sale and desired to deliver these before developing the sale of the new machine. The invention was followed up by the application filed March 17, 1924.

The witness saw the first Parker machine in August, 1923, two months after he had completed his device. He came in competition with it at San Pedro, and his machine was accepted in preference to that of Parker, which was then, according to the witness, operating with difficulty, not yet perfected, and still in an experimental stage. Plaintiffs made no sale of their machine until either the following year or 1925.

The first problem of Dunn and Eldridge was to find some satisfactory mechanical means for carrying the wire around the package under tension. They developed a circular device, which took the shape of an oscillatory ring, used in both their flat knot and corner knot machines. They provided compensating sheaves to take care of the problem arising from carrying around the package not only the wire that was used to bind it but also a portion of the main body of wire. Their fundamental idea, Dunn testified, came from the ordinary block and tackle, a combination of pulleys and ropes, to absorb a certain amount of surplus rope or wire. Dunn's testimony was corroborated and substantiated by Eby, H. P. Healey, W. H. Schroeder, and F. N. Libbey.

After careful examination of the record, remembering that any earlier date claimed by the plaintiffs depends upon the uncorroborated evidence of the witness Twomley, I am convinced that the Eby machine antedates anything that Parker did, and that the Dunn and Eldridge invention, disclosed by their applications, is prior to those of Parker. Plaintiffs' own records, even as late as December, 1923, referred to their first machine as experimental. It follows that anything in the Eby machine that would infringe Parker, if it were later, if prior, must anticipate. Knapp v. Morss, 150 U. S. 221, 14 S. Ct. 81, 37 L. Ed. 1059; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121; Wells v. Curtis (C. C. A.) 66 F. 318; Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064; Parramore v. Siegel-Cooper Co. (C. C. A.) 143 F. 516; General Electric Co. v. Corliss (C. C. A.) 160 F. 672. It follows that the plaintiffs cannot complain of infringement against defendants. Rather Dunn and Eldridge anticipate plaintiffs.

The teachings of patent '259 were never followed by plaintiffs except in building the experimental machine. It operated, but apparently was not practical for the demands of the trade. It was not efficient, and, in my opinion, followed a plan of construction different from that of Dunn and Eldridge. The '259 machine belongs to the genus shown by Thompson, Leaver, and others. If I am wrong in my conclusion that Dunn antedated Parker, upon consideration of the record, I find that '259 is not a ring gear machine, and, even though the patent should be held valid, I am of the opinion that there is no infringement.

But a serious question arises as to the validity of '259.

A typical claim is No. 43, as follows: "In an apparatus of the character described, a bundle supporting means, rotatable means for tightly winding a tie member under tension around the bundle so that the meeting portions of the tie member are in relative parallelism with each other and in relative parallelism with the adjacent face of the bundle, and means for

twisting upon each other the parallel portions of the tie member so as to form a joining parallel with the adjacent face of the bundle."

A bundle "supporting means" of course, is any suitable support. If any inventive quality is implied, it is disclosed in Thompson, No. 1,152,670. "Means for winding wire under tension" includes the human arm or any mechanical contrivance carrying wire around the bundle. "Relative parallelism" is shown in a former patent of McChesney, No. 1,357,883. Evans, reissue No. 16,292, apparently antedates everything in the combination claimed except the flat knot, but it is obvious from an examination of the art that such a knot is old. "Means for twisting parallel portions of the tie" were likewise old. Everything that appears in the combination in general terms appears in the prior art.

In addition the language of the claims is so general and vague as in the opinion of the court to teach nothing. Claim No. 44 is as follows: "Means for effecting encircling of a tensioned binding wire about an object to be found and tied, and means for securing the wire in a substantially flat joint." The other claims are equally general.

In White v. Dunbar, 119 U. S. 47, 51, 7 S. Ct. 72, 74, 30 L. Ed. 303, the court said: "Some persons seem to suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The context may, undoubtedly, be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim; but not for the purpose of changing it, and making it different from what it is. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms. This has been so often expressed in the opinions of this court that it is unnecessary to pursue the subject further."

In view of this language, I cannot attribute invention to the claims sued upon. I am of the opinion, therefore, that patent '259 is invalid and teaches the art nothing.

There can be no claim of mechanical equivalents here. The language of Judge Gilbert in Hardison v. Brinkman (C. C. A.) 156 F. 962, is directly pertinent. There he said: " * * * In a combination patent for an improvement in the arrangement or adaptation of old elements, the inventor is not entitled to a broad interpretation of the doctrine of mechanical equivalents, so as to cover a device not specifically included in his claims and specifications. * * * "

The '260 machine the court believes to be, at its best, merely an improvement over the Evans reissue patent. Former counsel for Parker admitted that no radical changes were made, but that Parker claims over Evans only a tie in both directions and rotation of the ring in two directions. No improvement patent was applied for.

The prior art in tying machines reaches back seventy-five years. Consequently none of the patents here can be considered as pioneer, but must be included within the classification of improvement patents and governed by the rules of strict interpretation of such genus. Patent '260 is within this category. The application was filed March 12, 1925, and it is shown that Parker knew of Eby's machine fully three years before that date. Again we have an instance of the rule that what might be infringement, if later, is anticipation, if earlier. John I. Paulding, Inc., v. Leviton (D. C.) 38 F.(2d) 242. Consequently, if there is anything in Eby that infringes this patent, in view of Dunn and Eldridge's earlier date, what, if anything might be considered infringement becomes anticipation.

The file wrapper discloses that against this Parker application many patents were cited by the Examiner, who finally said that the contribution of Parker "resides in the reversal of the ring after each complete revolution, together with combination and functions incidental thereto." An amendment resulted in a large number of additional claims, apparently transferred from Leaver to Parker. On July 11, 1932, there was a twenty-two page amendment, adding sixty-two claims. This was ten years after Eby's machine was invented and on the market. Consequently Dunn and Eldridge requested interference between their application '734 and Parker '260 on some thirty-two claims, including most of those in suit. Interference was declared August 7, 1933, and preliminary statements were due September 18, 1933. Attorneys for

Dunn and Eldridge in January, 1934, asked to add six more claims of the Parker patent to the interference and to have a new interference as to the same. Counsel for Parker maintained that these claims and many of those previously suggested in the interference did not read on Dunn and Eldridge. The Examiner so held, and pointed out the distinction between Parker on the one hand and Dunn and Eldridge on the other.

Plaintiffs now contend inconsistently that certain of these claims, including 7, do read upon the Dunn and Eldridge structure; that is, Eby's machine. The claims were allowed, though they do not, in the opinion of the court, include any invention over prior art and are anticipated by the Eby machine. Claims 12 and 13 are met by the flat-knot twister of Foster, No. 646,-819 (1900). Claims 65 and 66 are anticipated by McChesney, Wright, and Hatch. Claim 69, if it reads upon Dunn and Eldridge, as the Examiner apparently did not believe, is anticipated by Eby. The same is true of claims 12, 13, 76, and 87.

Patent '260, covering the commercial machine of plaintiffs, in so far as Dunn and Eldridge are prior inventors and in so far as they anticipate, is void. The records show that the earliest date claimed for the first drawings for '260 is December 6, 1922. But the work sheets, running from December 14, 1922, through 1923, were marked "experimental." The first trial run was made in August, 1923, but the machine was rejected by the tester and Eby's purchased. When Twomley started to develop the machine in 1922, he already knew about the Eby device. Parker did not place a flat knot on the bottom until after Eby's flat knot machine was on the market. If there were anything in adding the flat knot to the combination, that conception of Dunn antedated that of Parker. Dunn's completion was in June, 1923; Parker was struggling with his in August, 1923, and not until 1924 or '25 did he sell a machine of any character.

There is a further question as to the validity of all claims of '260 sued upon, on the ground that they are indefinite and uncertain. In other words, they are not so clear, exact, and certain in terms as to enable any one skilled in the art to practice invention, within the meaning of such authorities as Robinson, § 972, and cases cited; The Incandescent Lamp Patent, 159 U. S. 465, 467, 16 S. Ct. 75, 40 L. Ed. 221;

Germer Stove Co. v. Art Stove Co. (C. C. A.) 150 F. 141; Carlton v. Bokee, 17 Wall. 463, 21 L. Ed. 517, 519; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Palmer v. John E. Brown Mfg. Co. (C. C. A.) 84 F. 454; Chemical Rubber Co. v. Raymond Rubber Co. (C. C. A.) 71 F. 179-183. Were it necessary to a decision of the case, I would be impelled to conclude that the claims sued upon are invalid for this reason and on the ground also that they are claims for the function of the machine and not for the mechanical combination for carrying out that function, and that the claims overlap and involve double patenting.

If any of the claims of '260 should be held valid and not anticipated by Dunn and Eldridge, still there is no infringement of claims 7, 69, 12, 13, and 87. Eby does not halt the device as provided therein, nor does he place either wire through the twister during the operation. He does not discharge the twister toward the bundle; rather his twister discharges parallel to the bundle. One portion of the wire does not "overlap another in a plane substantially parallel to the adjacent surface of the object." Claims 65, 66, 70, 76, 85, and 86 are clearly anticipated by Dunn and Eldridge.

I conclude that, as to the claims involved in interference, there is priority in Eby; that they are void. As to claims 7 and 69, which defendant endeavored to place in interference, the Patent Examiner held the claims do not read upon Eby. Counsel for plaintiffs so argued in the Patent Office, and I agree with the conclusion of the Examiner in that respect. Consequently those claims are not infringed, if they are valid. The evidence is clear that there is no infringement as to claims 12, 13, and 87; that claim 69 reads neither on Parker nor on Eby; that it is void and, if valid, that it is not infringed.

Defendants contend that there is no joint interest in the plaintiffs, justifying joint maintenance of this action. This I do not find it necessary to decide in view of the views expressed.

Formal findings of fact and conclusions of law are adopted contemporaneously with the entry of this memorandum and such findings of fact and conclusions of law shall include what is here set forth by way of reference. There will be a decree dismissing plaintiffs' bill for want of equity at plaintiffs' costs. Proper form may be submitted.